IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| DUSTIE AND ERIC BERGERON; MALE MINOR BERGERON; and FEMALE MINOR BERGERON, §§§§ | |
| Plaintiffs, § | |
| V. § | A-15-CV-00657-LY-ML |
| § | |
| SELECT COMFORT CORPORATION, § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

TO:   THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Select Comfort Corporation's Motion to Dismiss the Complaint ("Motion to Dismiss") (Doc. #8); Plaintiff's Opposition to Defendant's Motion to Dismiss ("Response") (Doc. #12); Defendant Select Comfort Corporation's Reply Memorandum In Support of Motion to Dismiss the Complaint ("Reply") (Doc. #16),[1] and Plaintiff's Reply Memorandum to the Defendant's Supplement In Support of Their Original Motion to Dismiss the Complaint ("Sur-Reply") (Doc. #18).  United States District Judge Lee Yeakel referred the Motion to Dismiss (Doc. #8) and related briefing to the undersigned for resolution of non-dispositive matters and a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rules 1(c) and 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

**I.   ORDER AS TO UNREPRESENTED PLAINTIFFS**

As a threshold matter, the Complaint lists Dustie Bergeron, Eric Bergeron, and their two minor children as Plaintiffs, but the original state court petition was brought and signed only by

---
[1] Document 17 is a duplicate of the Reply (Doc. #16), and for clarity, will not be cited here.

1

Plaintiff, Dustie Bergeron, *pro se*. *Id.* at 13. Dustie Bergeron continues to be the only Plaintiff whose signature appears on court filings in this matter. *See, e.g.*, Resp. (Doc. #12) at 4; Sur-Reply (Doc. #18). Because Dustie Bergeron is not an attorney, she may not represent her husband or minor children. 28 U.S.C. § 1654; *Wade v. Carrollton-Farmers Branch Indp. Sch. Dist.*, No. 3-09-CV-0346-O, 2009 U.S. Dist. LEXIS 131375, *5-6 (N.D. Tex. June 26, 2009) (citing *Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978)). Therefore, the Magistrate Court hereby **WARNS and ADVISES** Eric Bergeron and each of the two minor plaintiffs that they must appear through counsel in this matter. Eric Bergeron, who is not a minor, may alternatively elect to make an individual appearance *pro se*, on his own behalf only.

**IT IS ORDERED** that Eric Bergeron and each of the two minor plaintiffs must file a notice of appearance through counsel in this matter within **sixty (60) days** of the entry of this Order and Report and Recommendation. Eric Bergeron, as noted above, has the alternative option to appear *pro se*. Failure to enter an appearance through counsel (or, in Eric Bergeron's case, *pro se* if desired) may subject the unrepresented plaintiffs' claims to **DISMISSAL WITHOUT PREJUDICE** for lack of prosecution and failure to comply with this Order.

**IT IS FURTHER ORDERED** that Dustie Bergeron, who has stated in her Complaint that she is married to and resides with Eric Bergeron and is the mother of each of the minor plaintiffs, must personally provide Eric Bergeron and each of the minor plaintiffs with a copy of this Order and Report and Recommendation. To further ensure proper notice to each of the unrepresented plaintiffs, the Clerk's Office is **ORDERED** to provide a copy of this Order and Report and Recommendation to Eric Bergeron individually, and to each minor plaintiff individually, care of Eric Bergeron and Dustie Bergeron, at the address provided for Dustie Bergeron and Eric Bergeron in the Clerk's records of this case.

## II. REPORT AND RECOMMENDATION ON THE MERITS

As to Plaintiff Dustie Bergeron's claims, which are properly brought *pro se*, the Magistrate Court provides the following Report and Recommendation to the District Court.

### A. Background

*1. Procedural Background*

On June 16, 2015, Plaintiff Dustie Bergeron filed suit in the 277th District Court of Williamson County, Texas, against Defendant, Select Comfort Corporation. Compl. at 1. Defendant, Select Comfort Corporation ("Select Comfort"), was served with the original Complaint on July 9, 2015. Mot. Dism. (Doc. #8) at 11. On August 3, 2015, Select Comfort timely removed the case to the Austin Division of the United States District Court for the Western District of Texas on the basis of diversity jurisdiction. Not. Remov. (Doc. #1).

Federal subject matter jurisdiction is proper on the basis of diversity of citizenship if all defendants are citizens of a different jurisdiction than the plaintiff's domicile, and the amount in controversy is in excess of $75,000. 28 U.S.C. § 1332. It is undisputed these jurisdictional prerequisites are met here. The Bergerons are, according to the Original Petition, all residents of Texas. Compl. at 1. Select Comfort is incorporated in Minnesota and has its prinicipal place of business in Minneapolis, Minnesota. *Id.*; Not. Removal at 2. The Complaint alleges damages, including statutory treble damages and punitive damages, in the amount of $40 million. Compl. at 13. Therefore, this court's exercise of jurisdiction is proper. 28 U.S.C. § 1332.

*2. Factual Background*

Plaintiff alleges she and her family have suffered a variety of chronic medical complaints as a result of mold inside their Sleep Number mattress. *See generally* Compl. at 14-22.

According to Plaintiff, she and her husband purchased the Sleep Number mattress in Mesquite, Texas, on or about June 10, 2000. Compl. at 2. Plaintiff does not pinpoint the onset of any particular illness or injury from the mattress, but alleges "[s]lowly over time . . . things started to change . . . and no one could figure out or understand why." *Id.* (ellipses in original). Plaintiff asserts each member of the family "began to get sick, to varying degrees, and progressively worse, over a long period of time. This 'inexplicable' mystery illness plagued every portion of each of our lives, and it seemed as if no doctor could figure out what the cause could possibly be." *Id.* Plaintiff alleges medical records "over the course of 14 years or so, show vast and numerous doctor visits," all of which she now attributes to "mold-related illnesses in myself and my family." *Id.* at 3. Plaintiff does not allege any doctor ever linked any of the symptoms she or her family members exhibited to mold, or to any particular common cause. *See id.* For unspecified reasons, Plaintiff "finally came to the conclusion that there had to be something in or about the bed." *Id.*

On or about June 18, 2013, Plaintiff stripped the bed down and opened the zipper on the mattress. *Id.* She alleges she "saw multiple dark areas on the foam and air chambers" inside the mattress and "got extremely nauseous and began to vomit." *Id.* She alleges this discovery prompted her and her husband to "sit and look up what we had just found in our bed." *Id.* By comparing their symptoms to internet lists of symptoms of mold exposure, Plaintiff and her husband concluded the black substance inside their mattress was mold and the family's fourteen years of miscellaneous health problems were caused by exposure to this mold in the mattress. *Id.* at 4. Plaintiff's internet investigation further led her to a website she alleges was created by Defendant on or about June 2, 2009, called SleepNumberFacts.com, which disclosed that mold can be an issue with Sleep Number beds. *Id.* at 3-4. Plaintiff also obtained, via the Freedom of

4

Information Act, a Consumer Products Safety Commission "file" created in July 2004 "regarding the mounting complaints of mold in [Sleep Number] beds." *Id.* at 4 n.4.

Plaintiff contacted Select Comfort Customer Service on or about June 18, 2013, the day after discovering the black substance inside the mattress, and complained of finding "mold in my bed." *Id.* at 5. The company sent Plaintiff a "new, similar bed" and allegedly instructed her to discard the old mattress. *Id.* Plaintiff disposed of the old mattress as instructed, but asserts she cut off and kept a piece of the old mattress as evidence "in case it ever came to anything like this." Resp. at 3.

### 3.    *Summary of Legal Argument*

Defendant contends all Plaintiff's claims,[2] which include multiple theories of products liability, negligent misrepresentation, breach of express and implied warranty, false advertising, fraud, and violations of the Texas Deceptive Trade Practices Act with malice, are barred by Texas' applicable two- and four-year statutes of limitations. TEX. CIV. PRAC. & REM. CODE §16.003(a) (two-year statute of limitations for personal injury claims); *id.* at § 16.004(a)(4) (four-year statute of limitations for fraud); TEX. BUS. & COMM. CODE § 17.565 (two-year statute of limitations for DTPA claims); *id.* at § 2.725(a) (four-year statute of limitations for warranty claims). Plaintiff argues the discovery rule or, alternatively, the doctrine of fraudulent concealment should apply to preserve her claims until June 18, 2009, the date of her alleged discovery of the mold in the mattress. *See Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) (The Texas Supreme Court has "recognized two doctrines that may delay accrual or toll limitations: (1) the discovery rule and (2) fraudulent concealment."). Defendant contends there is

---

[2] Though Plaintiff complains the replacement mattress has exhibited various defects in workmanship and durability, her legal claims all relate to the alleged latent mold defect in the mattress she and her husband purchased in 2000. Compl. at 6-13.

no legal basis to apply the discovery rule or the doctrine of fraudulent concealment in this case. *See Exxon Corp. v. Emerald Oil & Gas Co*., 348 S.W.3d 194, 208-09 (Tex. 2011) ("Knowledge of injury initiates the accrual of the cause of action and triggers the putative claimant's duty to exercise reasonable diligence to investigate the problem, even if the claimant does not know the specific cause of the injury or the full extent of it.").

In the alternative, Defendant asserts the majority of Plaintiff's claims would be barred by the statute of limitations even if the discovery rule is applied in this case. Defendants contend, even though Plaintiff filed her Complaint within two years of her alleged discovery of the mold in the mattress, she failed to serve Defendant within the statutory limitations period and did not exercise due diligence sufficient for service to relate back to the limitations period under Texas law. *Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) ("A timely filed suit will not interrupt the running of the statute of limitations unless the plaintiff exercises due diligence in the issuance and service of citation."). Plaintiff responds that service was timely under the facts and circumstances of the case. *See id.* ("In assessing diligence, the relevant inquiry is whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances and was diligent up until the time the defendant was served.").

For the reasons outlined below, the Magistrate Court finds neither the discovery rule nor the doctrine of fraudulent concealment preserves Plaintiff's claims until her June 2013 investigation of the mattress. All of her claims are therefore time-barred by the applicable two- and four-year limitations periods. Because the statute of limitations is dispositive of all Plaintiff's claims, the Magistrate Court does not reach the merits of Defendant's alternative "diligent service" argument.

### B. Standard of Review

Ordinarily, a claim "accrues," triggering the applicable statute of limitations, when a wrongful act causes an injury, even if the fact of the injury is not yet discovered and even if all resulting damages have not yet occurred. *Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998) Plaintiff relies on two limited exceptions that toll the statute of limitations: the discovery rule and the doctrine of fraudulent concealment.

"Although similar in effect, the discovery rule exception and deferral based on fraud or concealment exist for different reasons." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996). "The discovery rule applies on a categorical basis to injuries that are both inherently undiscoverable and objectively verifiable." *Valdez* 465 S.W.3d at 229 (citing *Shell Oil Co. v. Ross*, 356 S.W.3d 924, 930 (Tex. 2011)). Fraudulent concealment, in contrast, is "a fact-specific equitable doctrine" that tolls the limitations period when a defendant who has a duty to disclose information to the plaintiff "conceals the existence of a cause of action from the party to whom it belongs." *Valdez*, 465 S.W.3d at 230 (citing *Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008); *Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983)). Both the discovery rule and the doctrine of fraudulent concealment are similar in that they delay the running of the limitations period only until the plaintiff discovers, or with reasonable diligence could have discovered, the existence of the cause of action. *Emerald Oil & Gas Co.*, 348 S.W.3d at 208-09.

*1. The Discovery Rule*

The discovery rule tolls the statute of limitations "in those cases where [1] the nature of the injury incurred is inherently undiscoverable and [2] the evidence of injury is objectively verifiable." *Computer Assocs.*, 918 S.W.2d at 456. These two criteria must both be satisfied in order for the discovery rule to apply. *S.V. v. R.V.*, 933 S.W.2d 1, 6-7 (Tex. 1996).

*a.     Inherently Undiscoverable*

"An injury is inherently undiscoverable if by its nature, it is 'unlikely to be discovered within the prescribed limitations period despite due diligence.'" *Shell Oil*, 356 S.W.3d at 929-30 (quoting *S.V.*, 933 S.W.2d at 7). "Inherently undiscoverable does not mean that a particular plaintiff did not discover his or her particular injury within the applicable limitations period." *Wagner & Brown v. Harwood*, 58 S.W.3d 732, 735 (Tex. 2001). Instead, the focus is on whether the type of injury at issue is categorically "the type of injury that generally is undiscoverable by the exercise of reasonable diligence." *Id.* (citing *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 886 (Tex. 1998)).

The Texas Supreme Court has recognized that "cases involving latent injuries or diseases sometimes merit application of this rule." *Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998) (collecting cases). In latent disease cases, the discovery rule is applicable until the plaintiff "experienced symptoms for a degree or for a duration that would have put a reasonable person on notice that he or she suffered from some injury and they discovered or, in the exercise of reasonable diligence should have discovered, the likely causal connection between their symptoms and their [source of] exposure." *Id.* Notably, however, "a plaintiff whose condition has not yet been affirmatively diagnosed by a physician can have, or in the exercise of reasonable diligence could have, access to information that requires, or would require, a reasonable person to conclude he likely suffers from [an exposure-related] illness." *Markwardt v. Tex. Indus.*, 325 S.W.3d 876, 887-88 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Childs*, 974 S.W.2d at 37-39.

The exercise of "reasonable diligence" requires a plaintiff to "further investigate[] the cause of his injuries" once he or she harbors "serious suspicions about the cause of his [or her]

8

injury." *BNSF Ry. Co. v. Phillips*, 59 Tex. Sup. J. 136, 2015 Tex. LEXIS 1084, *12-13 (Tex. 2015). "Knowledge of facts, conditions, or circumstances that would cause a reasonably prudent person to make an inquiry leading to the discovery of the cause of action is equivalent to knowledge of the cause of action for limitation purposes." *Bruning v. Hollowell*, No. 05-13-01033-CV, 2015 Tex. App. LEXIS 2730, *8 (Tex. App.—Dallas Mar. 23, 2015, pet. denied) (citing *Collective Asset Partners, LLC v. McDade*, 400 S.W.3d 213, 217 (Tex. App.—Dallas 2013, no pet)).

Furthermore, "[r]easonable diligence requires that [plaintiffs] make themselves aware of relevant information available in the public record." *Shell Oil*, 356 S.W.3d at 928 (citing *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 68-69 (Tex. 2011); *Kerlin*, 263 S.W.3d at 926); *see also Bruning*, 2015 Tex. App. LEXIS 2730 at *11-12. The "public record" encompasses not only public filings, such "case settlements and conveyances" of property, but also "materials publicly available" from other sources. *BP Am. Prod. Co.*, 342 S.W. 3d at 67-68. The public record can, in appropriate cases, include information available on the internet. *Bruning*, 2015 Tex. App. LEXIS 2730 at *9 (information on website Zillow.com "was enough to cause a reasonable person to investigate further.").

### b. Objectively Verifiable

The second prong of the discovery rule is the requirement that proof of the injury be objectively verifiable. *S.V.*, 933 S.W.2d at 7. "Objectively verifiable evidence is the key factor for determining the discovery rule's applicability." *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 215 (5th Cir. Tex. 1999) (citing *Askanase v. Fatjo*, 130 F.3d 657, 668 (5th Cir. 1997)).

"An injury is 'objectively verifiable' if the presence of injury and the producing wrongful act cannot be disputed, and the facts upon which liability is asserted are demonstrated by direct, physical evidence." *Bertrand v. Bertrand*, 449 S.W.3d 856, 866 (Tex. App.—Dallas 2014, no pet.) (citing *S.V.*, 933 S.W.2d at 7). The direct evidence must be such that both the injury and the wrongful act are "beyond dispute." *S.V.*, 933 S.W.2d at 7. "The Texas Supreme Court has stated that 'the bar of limitations cannot be lowered for no other reason than a swearing match between parties over facts and between experts over opinions.'" *In re Coastal Plains*, 179 F.3d at 215 (quoting *S.V.,* 933 S.W.2d at 15).

In latent injury cases, medical records may provide direct evidence of an injury, and there may be direct evidence of plaintiff's contact with defendant's product. *Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005)(per curiam). Nevertheless, if there is "no direct, physical evidence which demonstrates an indisputable nexus between [the injury] and [the product]," proof of the injury is not objectively verifiable and the discovery rule cannot be applied. *Id.*

   *2. Fraudulent Concealment*

"A party asserting fraudulent concealment must establish an underlying wrong, and that 'the defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'" *BP Am. Prod. Co.*, 342 S.W. 3d at 67 (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 888 (Tex. 1999)). As with the discovery rule, fraudulent concealment tolls the running of limitations only until the fraud is discovered or could have been discovered with reasonable diligence. *Kerlin*, 263 S.W.3d at 925. "Reasonable diligence" for purposes of fraudulent concealment requires the same awareness of the public record and reasonable investigation of red flags that is required in the discovery rule analysis. *Emerald Oil & Gas Co.*, 348 S.W.3d at

208-09.  In particular, "when there is actual or constructive notice, or when information is 'readily accessible and publicly available,' then, as a matter of law, the accrual of a fraud claim is not delayed."  *Cosgrove v. Cade*, 468 S.W.3d 32, 38-39 (Tex. 2015) (citing *Hooks v. Sampson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 59 (Tex. 2015)).

    **C.**    **Analysis**

For the reasons outlined below, Plaintiff's claims are not subject to tolling under either the discovery rule or the doctrine of fraudulent concealment after June of 2009.  Therefore, her claims brought in June of 2015 are time-barred.

    *1.  The Discovery Rule Does Not Apply After June of 2009*

    *a.  Reasonable Diligence Would Have Alerted Plaintiff To Her Claims By 2009*

Plaintiff does not state precisely when the family connected their alleged symptoms to the bed, but does state that the family's symptoms "can be traced as far back as 2001."  Compl. at 6.  Plaintiff further states the family has "moved several times to different parts of the country, and the ONLY common element in our lives throughout the years has been our Select Comfort/Sleep Number bed."  *Id.* at 4.  According to Plaintiff "[w]ith each delivery of the mattress to our new homes, there were months upon months of heightened symptoms and then stabilized, per say [*sic*] at a chronic level."  *Id.* at 12.

Standing alone, this alleged pattern might not have been enough to put Plaintiff on notice of "the likely causal connection between their symptoms and their [source of] exposure."  *Childs*, 974 S.W.2d at 37.  By her own admission, however, Plaintiff had access to internet postings and other information in the public record that, in the exercise of reasonable diligence, "would require [] a reasonable person to conclude [s]he likely suffers from [an exposure-related] illness."

11

*Markwardt*, 325 S.W.3d at 887-88 (citing *Childs*, 974 S.W.2d at 37-39). Plaintiff's Complaint includes direct quotes from a September 6, 2004 article that appeared in the national publication, *Furniture Today*, regarding Select Comfort's response to "television news reports" about mold in the Sleep Number mattress. David Perry, *ISPA Addresses Mold Issue*, Furniture Today, September 6, 2004, *available at* www.furnituretoday.com/article/471514-ispa-addresses-mold-issue (last visited January 8, 2016).[3] This same publicly available article notes that Select Comfort "said that mold can develop in any type of mattress including its airbeds . . . ." *Id.* Furthermore, the 2004 Furniture Today article noted Select Comfort beds "have a zip-open design that lets consumers look inside the bed" for mold. *Id.*

Plaintiff also relies on a Consumer Products Safety Commission ("CPSC") "file" she obtained via the Freedom of Information Act. Compl. at 4 n.4. Plaintiff asserts this CPSC file contains a July 2004 letter from the CPSC to Select Comfort requesting a "mandatory 15(b) report" concerning consumer reports of mold in Sleep Number beds. Plaintiff further asserts Defendant created a website, "SleepNumberFacts.com," on June 2, 2009 to respond to consumer allegations of mold problems. *Id.* The website (which displays a 2009 copyright on its front page) states, "This online resource is brought to you by Select Comfort, proud manufacturers of the Sleep Number Bed, to answer questions, dispel myths, and provide easy-to-understand information about bed mold." SleepNumberFacts.com, www.sleepnumberfacts.com (last visited January 8, 2016).

---

[3] Because this and other materials have been directly referenced in Plaintiff's Complaint, the Magistrate Court's consideration of them does not convert the Motion to Dismiss into one for summary judgment. FED. R. CIV. P. 12(d).

The "readily accessible and publicly available" information concerning mold in Sleep Number beds from 2004 on, particularly including the Defendant's own website created in 2009, put Plaintiff on constructive notice of the alleged connection between her symptoms and mold in her Sleep Number bed. *Cosgrove*, 468 S.W.3d 32, 38-39. Therefore, any application of the discovery rule in Plaintiff's case would have expired, at the latest, in 2009 when the company posted a nationally available internet website for the express purpose of advising consumers about bed mold. *Id.*; *see also Bruning*, 2015 Tex. App. LEXIS 2730 at *9.

### b. *Plaintiff's Alleged Injury Is Not Objectively Verifiable*

Even if Plaintiff is not charged with constructive notice of the publicly available information concerning Sleep Number Bed Mold available in 2009 and earlier, the discovery rule is inapplicable to her claims because the proof of her alleged injury is not objectively verifiable. *S.V.*, 933 S.W.2d at 7. Plaintiff contends Defendant cannot rely on the "objectively verifiable" prong of the discovery rule when the company's representative (allegedly its legal counsel) advised her to dispose of the mattress. Compl. at 5; Resp. (Doc. # 12) at 3. Troubling though this allegation is, this is not what is meant by "objectively verifiable" in the case law. *Bridges*, 119 F. App'x at 664. Plaintiff must have more than physical evidence of the mold on her mattress; she must be able to provide "evidence which demonstrates an indisputable nexus between [the injury] and [the product]" in order to overcome the limitations bar. *Id.*; *see also S.V.*, 933 S.W.2d at 7.

Plaintiff alleges she still has a piece of the mattress. Resp. (Doc. # 12) at 3. Even if that piece could be demonstrated to have mold spores in it, expert opinion testimony would be necessary to connect those mold spores to the 14 years of wildly diverse symptoms and conditions Plaintiff alleges the mattress caused her and her family. This inevitable battle of

experts is not a viable reason for setting aside the statute of limitations. *In re Coastal Plains*, 179 F.3d at 215; *S.V.,* 933 S.W.2d at 15.

Because Plaintiff's claims were not inherently undiscoverable through the exercise of due diligence after 2009, and because proof of her injury is not objectively verifiable, the discovery rule does not apply to toll the statute of limitations in this case. *Cosgrove*, 468 S.W.3d 32, 38-39; *S.V.,* 933 S.W.2d at 15.

### *2.  The Public Record Negates Plaintiff's Fraudulent Concealment Argument*

The availability of the 2004 *Furniture Today* internet article, the 2004 CPSC file, and the 2009 website created by Defendant to address consumer complaints of bed mold are equally fatal to Plaintiff's fraudulent concealment argument. *Cosgrove*, 468 S.W.3d 32, 38-39; *Emerald Oil & Gas Co.*, 348 S.W.3d at 208-09. Plaintiff is charged with constructive notice of these publicly available materials, and fraudulent concealment does not toll the statute of limitations in the face of such notice. *Id.*

Even if this public information is not deemed part of Plaintiff's necessary "reasonable diligence," the materials cited by Plaintiff destroy her fraudulent concealment argument. *BP Am. Prod. Co.*, 342 S.W. 3d at 67. In particular, the website created by Defendants in 2009 for the express purpose of informing consumers of the possibility of mold in Sleep Number beds negates the required element of a fraudulent concealment claim, that the defendant intentionally concealed the existence of a potential cause of action with the intent to deceive the plaintiff. *Id.*

Because Plaintiff had constructive notice through publicly available documents that mold could be an issue with Sleep Number beds, and because a significant portion of that public notice

was provided by Defendant in 2009, the doctrine of fraudulent concealment does not apply to toll the statute of limitations after 2009. *Id.*

### III.  RECOMMENDATIONS

Plaintiff's causes of action accrued, at the latest, on June 2, 2009, when she alleges Defendant posted its SleepNumberFacts.com resource informing consumers about the possibility of mold in Sleep Number Beds. Therefore, her claims governed by two-year statutes of limitations expired, at the latest, on June 2, 2011. TEX. CIV. PRAC. & REM. CODE §16.003(a); TEX. BUS. & COMM. CODE § 17.565. Plaintiff's causes of action governed by a four-year statute of limitations expired, at the latest, on June 2, 2013. TEX. CIV. PRAC. & REM. CODE §16.004(a)(4); TEX. BUS. & COMM. CODE § 2.725(a). Because Plaintiff did not bring suit until June 16, 2015, her claims are time-barred.

Therefore, the Magistrate Court **RECOMMENDS** the District Court **GRANT** the Motion to Dismiss (Doc. #8).

The Magistrate Court **FURTHER RECOMMENDS** the District Court **DISMISS** all of Plaintiff Dustie Bergeron's claims **WITH PREJUDICE** as time-barred.

As noted above, the Magistrate Court **ORDERS** the unrepresented plaintiffs in this case, Eric Bergeron, male minor Bergeron, and female minor Bergeron, to appear through counsel (or in Eric Bergeron's case, either through counsel or *pro se*) within **sixty (60) days** of the entry of this Order and Report and Recommendation. Failure to comply with this Order may subject the unrepresented plaintiffs' claims to dismissal without prejudice.

To ensure proper notice of this Order to the unrepresented Plaintiffs, **IT IS FURTHER ORDERED** that Dustie Bergeron must personally provide Eric Bergeron and each of the minor plaintiffs with a copy of this Order and Report and Recommendation.

Finally, the Clerk's Office is **ORDERED** to provide a copy of this Order and Report and Recommendation to Eric Bergeron individually, and to each minor plaintiff individually, care of Eric Bergeron and Dustie Bergeron, at the address provided for Dustie Bergeron and Eric Bergeron in the Clerk's records of this case.

## IV.   OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C);  *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996)(en banc).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is

ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED January 11, 2016

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE